UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY DOWADAIT,
as Personal Representative of the Estate
of ROGER DOWADAIT, Deceased,

CASE NO. 04-CV-71124-DT
HON. LAWRENCE P. ZATKOFF

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.
      _____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on May 9, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket #26). Plaintiff has filed a response, and the deadline for Defendant to reply has expired. The Court finds that the facts and legal arguments pertinent to Defendant's Motion for Summary Judgment are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

**A.     Facts**

This cause of action arises out of a claim for No-Fault benefits allegedly due and owing the Estate of the Plaintiff's Decedent, Roger Dowadait, as a result of injuries he sustained in a May 12, 1995, motor vehicle accident. Mr. Dowadait's injuries rendered him a quadriplegic. Mr. Dowadait was hospitalized from the time of the accident until August 26, 1995, at which time he was released first to an apartment and then to his home. As a result of his injuries, Mr. Dowadait required extensive care 24 hours per day.

Commencing with his release from the hospital on August 26, 1995, Defendant arranged for professional home health aides to provide attendant care services, including a bowel care program, four hours each day at the rate of $13.50 per hour. Subsequently, Defendant and Roger Dowadait's wife, Kim Dowadait, reached an agreement that she would be reimbursed for twelve hours of attendant care services each day, at a rate of $6.50 per hour. Defendant also agreed to compensate Mrs. Dowadait an additional four hours per day, at the rate of $7.50 per hour, for any day that the home health aides did not show up to perform the bowel care program. Beginning on June 17, 1996, Defendant allowed Mrs. Dowadait to hire independent home health aides at a cost of $9.50 per hour, and at Mrs. Dowadait's request of July 23, 1996, Defendant also increased her rate to the same amount. Approximately a year later, the Dowadaits elected to resume the services of professional home health care agencies rather than hiring independent home health aides. Room and board benefits (cost of meals, utilities, rent and other expenses that would have been due had Mr. Dowadait continued to be confined to an institution) were never paid by Defendant once Mr. Dowadait resumed living in his home.

Mr. Dowadait died on November 4, 2003.

**B.     Legal Action**

As set forth below, Plaintiff believes that Mrs. Dowadait provided her husband with identical care to that which would have been provided by a nursing facility but Defendant paid Plaintiff

substantially less than it should have for such care. Plaintiff also claims Defendant failed to pay Plaintiff room and board benefits as required under Michigan law. Plaintiff filed a three-count Complaint in Wayne County Circuit Court on February 18, 2004, which Complaint included the following claims: (a) Count I - Bad Faith, Tortious Breach of Implied Covenant of Good Faith and Fair Dealing and Bad Faith Denial of the Existence of a Contract as well as Tortious Interference with a Contract Independent of the Breach of the Contract at Issue; (b) Count II - Violation of MCL 500.2026(1) through Defendant's Failure to Properly Investigate the Claim, Misrepresentation, Act in Good Faith and Compelling the Plaintiff to Institute Litigation to Recover Amounts Due, and (c) Count III - Fraud. Defendant removed the action to this Court on March 26, 2004, on the basis of diversity jurisdiction.

**C.     Claims of the Parties**

The essence of Plaintiff's action is that Defendant "fraudulently cheated the Plaintiff of attendant care benefits as well as room and board benefits." Plaintiff asserts that Defendant should have been reimbursing Plaintiff for Mrs. Dowadait's services at the reasonable market value of such services and that Defendant failed to inform Plaintiff that Mr. Dowadait was entitled to room and board benefits from the time of the accident until his death. Plaintiff further believes that Defendant never formally denied claims made by Plaintiff that Mr. Dowadait was entitled to be paid more for the services being provided to him.

Plaintiff claims that Mrs. Dowadait rendered services to and for Mr. Dowadait of an attendant care nature similar to that of a high tech licensed practical nurse "[s]ince returning to his home in 1995, following his initial care and treatment." Plaintiff claims that Defendant paid her substantially less than the reasonable market rate for her care, as Defendant paid home health aide companies in excess of $12.00 to $13.00 per hour for the same services for which they paid her $6.50. When the amount increased to $7.50 per hour, Mrs. Dowadait testified that she was told by Derinda Flannery, a claims adjuster assigned to Mr. Dowadait's file, that she was entitled to $7.50 an hour and that was all she was going to get. Plaintiff also claims that Defendant knew that Mrs.

3

Dowadait was providing care equivalent to a licensed practical nurse with a fair market rate of $53.00 to $62.00 per hour, yet paid her only $9.50 an hour. Plaintiff states that Mrs. Dowadait had been trained on how to catheterize Mr. Dowadait every two to three hours per day and to perform a bowel program which takes two to three hours per day, plus prepare meals and conduct physical therapy range of motion exercises.

Plaintiff's Response Brief includes numerous references to the notes of Defendant's adjusters assigned to Mr. Dowadait, wherein the adjusters documented that Mrs. Dowadait provided comparable care at a reduced amount, including the following instances:

> 1. September 9, 2003 notes indicating that they are paying $13.50 per hour for attendant care services provided by Mrs. Dowadait but a negotiated rate of $22.00 to a commercial company providing same level of care.
>
> 2. October 1, 2002 notes of Defendant's adjuster Linda Swagler:
>
> ". . . wife provides care equivalent to that of LPN. Duties include the following which are different from HHA (home health aid). They include the following: wound care, one person transfers, transfers using hoyer lift., bowel program, insert of catheters, Kim has been trained in same and doing same since MVA., the $18.00/hr was incorrectly stated., actually we pay Kim $9.50 an hour for HHA and pay ten hours per month for the LPN duties at $9.50 an hour commercial high tech LPN rates for commercial companies run $53.00 to $62.00 an hour . . ."
>
> 3. October 22, 1996, notes stating that "Discussed w/Roger - effective tomorrow - attendant care is only 8 hours per day @ $9.50 an hour or $76.00 per day."
>
> 4. September 19, 1995, notes stating that "Roger was discharged on 8-26. He is currently in a barrier free apt @ $895 per."

Plaintiff's brief also contains the deposition testimony of numerous employees of the Defendant with respect to room and board benefits and the difference in what Defendant paid Mrs. Dowadait and what the reasonable market value of services would be:

> 1. Douglas Vredeveld, a team manager supervising one of the day to day claims adjusters on Plaintiff's file, said (in response to a hypothetical question) that it would be fraudulent for an adjuster to knowingly pay less for benefits than what was owed.

4

    2.    Lynn Deneau, a claims processor in the Personal Injury Protection Department for Defendant, said that she was not familiar with room and board claims, that she doesn't have any such claims that she pays on and that she has never presented to an insured the right to pursue a room and board claim.

    3.    Doreen Smith, a Claims Superintendent for Defendant, said it was unreasonable and inappropriate if a claim representative was "stealing money from an insured by not paying them and the supervisor doesn't catch it." She also stated that the disparity between $62.00 an hour as the market rate versus the $9.50 paid to Mrs. Dowadait was unfair and unreasonable, taking into account any overhead costs of the commercial company.

    4.    Patti Selaskey-Benie, a Claims Representative for Defendant, testified that (a) Defendant does not have a Fraud Investigation Unit to determine underpayment or non-payment by adjusters, (b) she never had a manager tell her that room and board benefits were owed, (c) as a Supervisor/Manager, she was unaware of the existence of these types of benefits, and (d) that in her opinion, it would be fraud if a supervisor or manager knows about a benefit that is owed but purposely doesn't tell the adjuster about it.

    5.    Cindy Gronlund, a Team Manager, admitted that a family member is entitled to be compensated for services provided and the rate of compensation is to be determined based on the value of the service, and stated that if someone is qualified and competent in providing the service, the failure to pay the reasonable customary market rate would be inappropriate and could be fraudulent.

Defendant asserts that the care provided by Mrs. Dowadait was deficient and/or lacking, as documented by the notes of home health aides from late 2002 through Mr. Dowadait's death on November 4, 2003. Plaintiff responds that Defendant's claim adjuster wrote that Mrs. Dowadait was providing care for her husband and that he was doing extremely well under her care as of January 25, 2000.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as

to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

As this is a diversity action, the Court applies the applicable state law, i.e., Michigan law, in its analysis of the instant Motion for Summary Judgment.

### IV.  ANALYSIS

**A.     No-Fault Benefits**

MCL §500.3107 provides, in pertinent part:

> Sec. 3107. (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following: (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. Allowable expenses within personal protection insurance coverage shall not include

> charges for a hospital room in excess of a reasonable and customary charge for semiprivate accommodations except if the injured person requires special or intensive care, or for funeral and burial expenses in the amount set forth in the policy which shall not be less than $1,750.00 or more than $5,000.00.

Michigan courts have recognized that room and board is an allowable expense when the insured who could be institutionalized is cared for at home. *See, e.g.*, *Reed v. Citizens Ins. Co. of America*, 198 Mich.App. 443 (1993); *Griffith v. State Farm Mut. Auto. Ins. Co.*, 2002 WL 1897656; *Booth v. Auto-Owners Ins. Co.*, 224 Mich.App. 724 (1997).

*1.     One-Year-Back Rule*

Defendant argues that Michigan law provides that a claim for services or expenses is barred to the extent such claim is based on services and/or expenses incurred more than one-year prior to the date the action seeking recovery for the benefits was commenced (the "one-year-back rule"). *See* MCL §500.3145(1), which provides, in pertinent part:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than one year after the date of the accident causing the injury unless written notice of the injury as provided herein has been given to the insurer within one year after the accident, or unless the insurer has previously made payment of personal protection insurance benefits for the injuries.  If notice has been given or payment has been made, the action may be commenced anytime within one year after the most recent allowable expense, work loss, or survivor's loss has been incurred.  However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

On this basis, Defendant argues that Plaintiff would not be entitled to recover on any claim for services provided and/or expenses incurred prior to February 18, 2003.[1] Defendant argues that the statute of limitations (namely the one-year-back rule) should be recognized, as Michigan courts have consistently enforced statutes of limitations and the policy interests advanced by them, including

---

[1] Plaintiff argues that the one-year-back rule, if applicable, would be triggered on January 17, 2003, the day Mr. Dowadait commenced litigation in Wayne County Circuit Court and that Plaintiff would be able to recover for services provided and expenses incurred from January 17, 2002, forward.  It is unclear what litigation Plaintiff relies on, as the case before this Court was initially filed in Wayne County Circuit Court on February 18, 2004.

affording the opposing party a fair opportunity to defend, avoiding stale demands and the prevention of plaintiffs gaining an unfair advantage by requiring an unsuspecting defendant to prepare a defense long afer the event from which the action arose. *See Stephens v. Dixon*, 449 Mich. 531, 534 (1995); *Bigelow v. Walraven*, 392 Mich. 566 (1974); *Geiger v. Detroit Auto Inter-Ins. Exchange*, 114 Mich.App. 283 (1982).

   *a.* *Statutory Exception*

   Plaintiff argues that the one-year-back rule is tolled from the date of a specific claim for benefits to the date of a formal denial of liability. *See Lewis v. DAIIE*, 426 Mich. 93, 101 (1986). Plaintiff asserts that Defendant has never formally denied benefits in this case with respect to the amount paid to Mrs. Dowadait or the room and board benefits. As Plaintiff notes in its Response Brief, Defendant has not attached to its Brief any letter in which Defendant formally denies the claim for No-Fault benefits made by Mr. Dowadait's attorney in 1995,[2] nor has there been any formal denial of the right to room and board benefits (the Court notes that Plaintiff has admitted that no claim was ever explicitly made for room and board benefits by Mr. Dowadait or Plaintiff). Defendant has not denied that there has been no formal denial of benefits with respect to either claim prior to Plaintiff filing the instant motion.[3]

   Plaintiff relies on *Johnson v. State Farm Mut. Auto. Ins. Co.*, 183 Mich.App. 752 (1990), in support of its argument. In *Johnson*, a widow notified her State Farm agent of her husband's death as the result of a motorcycle accident and made a claim for his death, apparently in the context of a claim under his motorcycle policy issued by State Farm. She did not make a claim for survivor's loss benefits under a State Farm automobile policy issued to the widow and her

---

[2]An attorney for Mr. Dowadait sent a letter to Defendant on May 30, 1995, only 18 days after the underlying accident, in which she put Defendant on notice that "[u]nder MCL [500.]3107 all reasonable charges incurred for reasonably necessary services for an injured person's care, recovery or rehabilitation are covered." The same letter requested prompt payment for benefits then due.

[3]Defendant never addressed the issue of room and board benefits. There was no discussion of this issue in its Brief in Support of the Motion for Summary Judgment and no Reply Brief was filed.

husband by the same State Farm agent. The *Johnson* court held that State Farm knew or should have known that the widow was entitled to survivor's loss benefits under the automobile policy once she notified State Farm of her husband's death and ruled that the one-year-back rule was tolled from the time of the notification of the loss until the insurer formally denied coverage or advised the insured of the need and how to file a claim.

In reaching its conclusion, the *Johnson* court cited and relied on a prior case involving State Farm, wherein State Farm had argued successfully that once notice of an injury was provided to an insurer under a workers' compensation policy issued by the insurer, that insurer was on notice of the injury for purposes of a no-fault policy issued by the same insurer, thereby coming within the statutory exception to the one-year-back rule. *See State Farm Mut. Auto. Ins. Co. v. Ins. Co. of N.A.*, 166 Mich.App. 133 (1988) (the "1988 State Farm case"). The *Johnson* court concluded that it would be absurd to require the widow to have to tell her insurance agent about her husband's death in the motorcycle accident twice in order to have made a claim under both the motorcycle policy and the automobile policy.

The *Johnson* court set forth extensive reasoning for the conclusion it reached, much of which the Court finds relevant to the instant case. First, that court discussed what would constitute notice of injury or loss:

> The statutory requirement of a notice of injury serves to put the insurance company on notice that a loss has occurred and to provide the company with basic information concerning the loss . . . It is, in our opinion, irrelevant whether plaintiff provided that information for purposes of recovering benefits under the motorcycle policy or for recovering beneiftis under the automobile policy. The fact remains that defendant received notice of the injury. Indeed, plaintiff's position in the case at bar is even stronger than was State Farm's position in [the 1988 State Farm case], since two entirely different kinds of insurance were involved in that case, no-fault automobile coverage and workers' compensation coverage, while in the case at bar theere are two closely related forms of insurance, automobile and motorcycle, involved. Indeed, the person to whom plaintiff provided the notice of the injury . . . was the same person to whom she would provide the second notice of injury . . ."

*Johnson*, 183 Mich.App. at 758.

9

The *Johnson* court then discussed whether the notice provided by the plaintiff was sufficient to constitute a "specific claim" for benefits sufficient to toll the one-year-back rule and rejected State Farm's argument that it was necessary for the widow to specifically file a claim for survivor's loss benefits under the automobile policy:

> **We do not believe it necessary for an insured to specifically inform the insurer of those portions of specific insurance policies under which the insured demands the payment of benefits. Rather, we believe that all an insured could reasonably be expected or required to do is inform the insurer of the specific loss for which benefits are sought. . . . Thus, once defendant received sufficient information to be informed that plaintiff suffered a compensable loss, the one-year-back rule was tolled until such time as defendant formally denied the payment of beneifts under the automobile policy.**

\* \* \* \* \*

> As the *Lewis* Court noted, one of the important purposes behind the enactment of the no-fault system was to reduce automobile accident litigation. . . . [I]t defies common sense to expect that most lay persons possess a sufficient level of sophistication with insurance matters and the no-fault statute to be able to specifically inform their insurance companies of which benefits they believe they are entitled to receive under their insurance policies.

> Rather, **what can reasonably be expected of insureds is that they inform their insurance agent of the occurrence of an insured loss and specifically inform the insurer of the nature of the losses suffered, such as death, bodily injury, hospitalization, property damage to the vehicle, etc. An insured ought then be able to reasonably rely on the agent to advise the insured of the benefits to which the insured might be entitled and to provide the insured with the appropriate forms to be filed.** Put another way, with respect to first-party benefits, the insured and the insurer are not supposed to be adverse parties. To hold otherwise would be to ignore the primary purpose of the no-fault system: namely, to provide for the prompt and efficient payment of benefits. [citation omitted] Had the Legislature intended that an insured would have to fight for the payment of benefits, it presumably would have been content with keeping the tort system.

\* \* \* \* \*

> To rule in defendant's favor would serve as an endorsement for an insurance company to wilfully withhold information from its insured, namely, what first-party benefits the insured might be entitled to, in hopes that the insured will not discover on his own what specific

10

> benefits under a policy he is entitled to receive. To allow insurance companies to engage in such maneuvering would be inconsistent with the purposes underlying the no-fault act. **Simply put, it is an insurer's obligation under the no-fault act to ensure that its insureds receive the prompt and fair payment of benefits to which the insureds are entitled without undue delay or the necessity of litigation, or even the need to retain counsel.**

*Johnson*, 183 Mich.App. at 762-65 (emphasis added).

Defendant argues that if Plaintiff was dissatisfied with the rate at which his care providers were being reimbursed, it was incumbent upon them to seek legal assistance at that time. *Citing Bromley v. Citizens Ins. Co.*, 113 Mich.App. 131 (1982). The Court finds that Defendant's interpretation of that case is correct; however, the language of the *Johnson* court (and the *Lewis* court, discussed below) demonstrate that the view of the *Bromley* court has been superseded.

The Court finds that in this case, Plaintiff's position is even stronger than that of the plaintiff in *Johnson*. Here, there is but one policy under which all No-Fault claims were made, and a claim was made for No-Fault benefits within one month of the accident. The Court finds that there is evidence that Defendant had notice of the injury of Mr. Dowadait and the losses and expenses he had incurred and would incur as a quadriplegic, including the attendant care services and the room and board expenses. The Court also finds that there is evidence that Defendant knew or had reason to know that Defendant was responsible for such expenses, even without Plaintiff specifying the policy section pursuant to which benefits were due. This is especially true as Defendant was a party to, and therefore had knowledge of, the rules set forth in the *Johnson* case. In addition, the *Reed* case had been decided two years prior to Mr. Dowadait's injury, so the obligation to pay room and board benefits was well established at the time of the injury.

As set forth in *Johnson*, Defendant's knowledge of the injury to Mr. Dowadait and the related care issues, specifically Mr. Dowadait's condition as a quadriplegic who required 24 hour care and who first spent time at an apartment for which Defendant paid room and board benefits, was enough to allow Plaintiff to reasonably rely on Defendant (through its employees and agents)

to advise the insured of the benefits to which the insured might be entitled and to provide the insured with the appropriate forms to be filed. Accordingly, the Court finds that the one-year-back rule was tolled in this case, and it does not operate to bar Plaintiff's claims.

   b.  <u>MCL §500.5855</u>

    Plaintiff also contends that the one-year-back rule for any claims being brought by Plaintiff in this action should be tolled because of Defendant's fraudulent concealment of Plaintiff's right to benefits under the No-Fault statute. Plaintiff relies on MCL §500.5855, which provides, in relevant part:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim . . . from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within two years after the person who is entitled to bring the action discovers, or should have discovered the existence of the claim . . ., although the action would otherwise be barred by the period of limitations.

Based on MCL §500.5855, Plaintiff argues that Defendant should be estopped from arguing that the one-year-back rule applies in this case. Plaintiff relies on *Lothian v. City of Detroit*, 414 Mich. 160 (1982), for the proposition that estoppel applies where there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely on that conduct and knowledge of the actual facts on the part of the representing or concealing party. Plaintiff cites numerous other cases in support of the argument that in a relationship between an insurer and its insured, there is a duty for the insurer to deal fairly with its customers, and an action for fraud may be predicated on misrepresentations or non-disclosures. *See, e.g.*, *Equitable Life Ins. of Iowa v. Halsew, Stuart & Co.*, 312 U.S. 410 (1941); *Michigan Nat. Groening v. Opsata*, 323 Mich. 73 (1948); *M&D, Inc. v. McConkey*, 231 Mich.App. 22 (1998); *Hearn v. Rickanbacker*, 140 Mich.App. 525 (1985); *Bank v. Marston*, 29 Mich.App. 99 (1970).

    Defendant argues that Plaintiff has failed to plead and prove the necessary elements of fraud, namely that (1) Defendant made a material misrepresentation; (2) the material misrepresentation was false; (3) when it was made, Defendant knew it was false, or made it

12

recklessly without any knowledge of its truth or falsity; (4) it was made with the intention that Plaintiff act upon it; (5) Plaintiff relied upon it; and (6) Plaintiff was injured. *See, e.g., Hi-Way Motor Co. V. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). Defendant acknowledges that fraud may be committed by suppressing facts, *Hord v. Envir. Research Inst. of Mich.*, 463 Mich. 399, 412 (2000), and that such "silent fraud" arises when a party with a legal duty to disclose material facts fails to do so. *Hord*, 463 Mich. at 412. *See also M&D Inc. v. McConkey*, 226 Mich.App. 801, 807-08 (1997).

Defendant argues that it had no duty to advise Plaintiff what its maximum rates were, both as to commercial attendant care providers and for family members providing attendant care, and that the imposition of such a duty would destroy the concept of arms' length bargaining. Defendant relies on *Wynn v. State Auto. Mutual Ins. Co.*, 856 F.Supp. 330, 335 (E.D. Mich. 1994), for the proposition that the duty owed by an insurer arises out of the insurance contract and the No-Fault Act and neither the No-Fault Act nor the insurance contract creates any duty for an insurer to "act as plaintiff's advisor with respect to informing him of the insurance benefits that are covered by the insurance contract or provided by the statute." In *Wynn*, the court stated that "plaintiff points to no case law or statutory authority which would support its claim that the defendant insurance company owed plaintiff or plaintiff's minor a duty to advise as to the gamut of benefits available to them." *Wynn*, 856 F.Supp. at 335. Therefore, Defendant believes that Plaintiff's allegations that Defendant fraudulently deprived Plaintiff of any benefits lacks the necessary element of the existence of a duty owed by Defendant to Plaintiff.

This Court concludes that it cannot afford much weight to the conclusions of the *Wynn* court. As the above discussion of *Johnson* reveals, Michigan courts have clearly recognized that insurance companies do have a duty to provide the benefits that are covered by the insurance contract when they are on notice of the loss.

In this case, Plaintiff alleges that the Defendant's misleading and fraudulent actions to conceal Plaintiff's rights to greater amounts for care provided by Mrs. Dowadait and room

13

and board benefits resulted in Plaintiff believing Plaintiff was entitled to no more than the amounts paid by Defendant. Plaintiff rejects Defendant's contention that any failure to pay benefits owed and/or advise Plaintiff of entitlement to room and board benefits was due to ignorance or confusion of Defendant. In support of its contention that Defendant knowingly and intentionally concealed Plaintiff's right to additional monies for services provided, Plaintiff has submitted documentation that the Defendant's claim file contained case law that made it clear that a family member providing in-home nursing care is entitled to be compensated for the reasonable value of her services, as well as "comparable pay as institutional service would provide." *See* Plaintiff's Exhibit J. Plaintiff also asserts that Defendant was paying $895 per month at an apartment for Mr. Dowadait before he returned home, and the notes of Defendant's claims adjuster reflect the same. Plaintiff therefore argues that Defendant understood the No-Fault Act and the benefits owed thereunder but fraudulently deprived Plaintiff of the same.

The Court finds that there is sufficient evidence on the record to support Plaintiff's position that Defendant knowingly and fraudulently concealed from Mr. Dowadait the benefits to which he was entitled, including increased pay for care provided by Mrs. Dowadait and room and board benefits. The notes of the Defendant's adjusters reveal that Defendant was cognizant that Mrs. Dowadait was paid less than others for the same level of services. The testimony of Defendant's own agents reveals a pattern of concealing from its own agents the availability and right of an insured to room and board benefits. Again, not only has the law regarding payment of services been clear since before Mr. Dowadait's accident, the Defendant was actually a party to one of the seminal cases in which Michigan courts set forth the controlling rules.

Defendant also argues that the *Lewis* court also ruled that a person claiming entitlement to No-Fault benefits "must seek reimbursement with reasonable diligence or lose the right to claim the benefit of a tolling of the limitations period" *Lewis*, 426 Mich. at 102-03, and Plaintiff has never exercised reasonable diligence to claim reimbursement. The Court finds that Defendant's argument lacks merit. First, the letter of May 30, 1995, from Mr. Dowadait's attorney

put Defendant on notice of Mr. Dowadait's injury and the claim for No-Fault benefits under MCL §500.3107. Second, like the *Johnson* court's view of the obligations of an insurer to advise an insured of the benefits to which the insured might be entitled, the *Lewis* court stated,

> Most persons are confident that, in the event of a loss, their insurer will pay their claim without the necessity for litigation. It is only when an insurer denies liability that it is unequivocally impressed upon the insured that the extraordinary step of pursuing relief in court must be taken. A contrary result today would require the prudent claimant to file suit as a precautionary measure when the one-year deadline approached, regardless of the status of the claim. In addition to requiring a level of sophistication many claimants may not possess, such an approach would encourage needless litigation. One of the important reasons behind the enactment of the no-fault system was the reduction of automobile accident litigation.

*Lewis*, 426 Mich. at 101-02. Third, the record reflects that Mrs. Dowadait approached Defendant's agents on numerous occasions in order to have her pay increased.

For the reasons set forth herein, the Court also finds that MCL §500.5855 would serve to toll the one-year-back rule in this case.

    *c.*    <u>*Conclusion*</u>

Accordingly, and for the reasons set forth in this Section IV.A.1., the Court DENIES Defendant's Motion for Summary Judgment insofar as Defendant requests the Court to impose the one-year-back rule to Plaintiff's claims.

    *2.*    *Defendant Requests Dismissal of Portions of Counts I*

Defendant argues that certain portions of Counts I of the Complaint should be dismissed because the remedies sought are not afforded under Michigan law. Defendant argues that the No-Fault Act is a comprehensive system that, in conjunction with the underlying insurance policy, exclusively governs any claim that Plaintiff may have for benefits arising out of the May 12, 1995, accident.

    *a.*    <u>*Independent Tort*</u>

Defendant argues that Michigan courts have refused to recognize an actionable independent tort based on a bad faith breach of an insurance contract. *See, e.g., Kewin*

15

*v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401 (1980); *Runions v. Auto-Owners Ins. Co.*, 197 Mich.App. 105 (1992) (wherein the court found that the only conduct alleged by the plaintiff as being tortious was the defendant's failure to pay the claim and stated that "[a]t most, [plaintiff's complaint] attempts to plead the non-existent tort of bad-faith handling of an insurance claim"). Defendant asserts that Plaintiff recognizes that this case is nothing more than a "contract action against Defendant arising out of the negligence and intentional acts of Defendant through its employees, agents, and/or assigns, and agents by estoppel."

The Court cannot agree that Plaintiff in this case bases the bad-faith claim on the mere fact that Defendant would not pay Plaintiff benefits. On the other hand, Plaintiff has failed to cite any authority for the existence of the tort of the bad-faith handling of an insurance claim.[4] Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's allegations in Count I of the Complaint that Defendant acted in bad faith or the existence of a tort independent of the alleged breach of contract claim.

   b. *Tortious Interference*

In its brief, Plaintiff withdrew the claim for tortious interference with a contract. The Court accepts that withdrawal as an acknowledgment that such claim is without merit. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment with respect to the tortious interference with a contract allegations in Count I of Plaintiff's Complaint.

   c. *Intentional Infliction of Emotional Distress*

Defendant argues that the conduct alleged by Plaintiff is simply not outrageous in character or extreme in degree as required to justify an award of emotional distress damages. Defendant further argues that Plaintiff must prove a breach of duty separate and distinct from the breach of contract and that Plaintiff has not done so. The Court disagrees. The record includes evidence and testimony from Defendant's adjusters and agents suggesting that Defendant's

---

[4]Such a tort claim likely falls within the parameters of fraud, which Plaintiff has plead in Count III of the Complaint and is addressed in Sections IV.A.1.b. above and IV.D. below.

16

conduct was fraudulent, unreasonable, inappropriate and outrageous, if done intentionally. Plaintiff has produced evidence that Defendant was aware of the law requiring payment of market value for services rendered and the obligation to pay room and board benefits. Such evidence could enable a fact finder to determine that the Defendant's conduct was intentional, extreme and outrageous. Therefore, the Court rejects Defendant's contention that Plaintiff's claim for intentional infliction of emotional distress is simply a part of the breach of contract claim. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment with respect to the intentional infliction of emotional distress allegations in Count I of Plaintiff's Complaint.

**B.     Additional Wage Loss and Replacement Service Benefits**

Defendant argues that Mrs. Dowadait admitted at deposition that Mr. Dowadait had received all of his work loss benefits from Defendant for the three years after the accident, as required by Michigan statute. Therefore, Defendant argues that it is entitled to a dismissal of the Plaintiff's claim for additional wage and replacement service benefits. Plaintiff admits that dismissal of that claim is appropriate in light of the deposition testimony of Mrs. Dowadait. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's claim for additional wage loss and replacement service benefits.

**C.     Count II - Uniform Trade Practices Act**

The parties agree that current case law indicates that there is no private cause of action for a claim of violation of the Uniform Trade Practices Act. Accordingly, Defendant's Motion for Summary Judgment with respect to Count II of Plaintiff's Complaint (i.e., the Uniform Trade Practices Act claim) is GRANTED.

**D.     Count III - Fraud**

For the reasons set forth in Section IV.A.1.b. above, the Court finds that there is adequate evidence on the record from which a fact finder could determine that Defendant engaged in fraud in failing to provide eligible benefits under the Plaintiff's policy. The Court also finds the evidence of intentional, extreme and outrageous conduct of Defendant in failing to pay constitutes an

independent basis for the fraud claim, and enables such a claim to be brought separate from the simple breach of contract claim for failure to pay the benefits due under the policy. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment with respect to Count III of Plaintiff's Complaint.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED with respect to: (a) Plaintiff's allegations in Count I of the Complaint that Defendant acted in bad faith such that there is a viable tort claim independent of the alleged breach of contract claim, (b) the tortious interference with a contract allegations in Count I of Plaintiff's Complaint, (c) Plaintiff's claim for additional wage loss and replacement service benefits, and (d) Count II of Plaintiff's Complaint (i.e., the Uniform Trade Practices Act claim). In addition, for the reasons set forth above, Defendant's Motion for Summary Judgment is DENIED with respect to all other claims brought by Plaintiff.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 9, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 9, 2005.

s/Marie E. Verlinde
Case Manager
(810) 984-3290